

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

April 25, 1974

The Honorable Lynn Cooksey
District Attorney
412 Texas Blvd.
Texarkana, Texas 75501

Opinion No. H- 282

Re: Whether Articles 2.04b and
2.05 of the Election Code require
that boundaries of county election
and commissioners precincts be
made to conform to city ward and

Dear Mr. Cooksey:

election precinct boundaries.

You have asked whether it is mandatory, under Articles 2.04b and
2.05 of the Election Code, Vernon's Texas Civil Statutes, for the commis-
sioners court to change the boundaries of existing county election and
commissioner precincts to conform to the boundaries of newly formed
city wards and election districts within the city of Texarkana.

You advise that in August of 1969, the commissioners court re-
established all election precincts of the county in accordance with Article
2.04 of the Election Code. Within the city of Texarkana, which has a
population in excess of 10,000 and is divided into six city wards, four
wards, because of the excessive number of qualified voters, were each
divided into two county election precincts. The city councilmen were
elected at large and not from one man wards or precincts.

In January, 1972, the Commissioners Court reformed commissioners
precincts to conform to the one-man, one-vote mandate of the United States
Supreme Court. New commissioner precinct lines were made to conform
to the then existing election precinct lines.

In December of 1972, the city council of the city of Texarkana made
drastic changes in the boundaries of all six of the city wards in order to
absorb newly annexed areas and to give each ward an equal number in
population. In February of 1973, the city council, in calling for an election

for city officers, provided for twelve new city election precincts, dividing each of the six new wards into two election precincts.

You state, "The new city election precincts bear little resemblance to the previously established county election precincts." Apparently the boundaries of nine of the twelve new city election precincts do not coincide with county election precinct boundaries and the city has requested the commissioners court to change the boundaries of the county election precincts within the city to conform to the new city wards and city election precincts.

Article 2.04 of the Election Code provides, in part:

"(a) Each county shall be divided into convenient election precincts by the Commissioners Court of the county, each of which precincts shall be differently numbered and described by natural or artificial boundaries or survey lines by an order entered upon the minutes of the Court. At any July or August term, the Court may make such changes in the election precincts as they deem proper, by such order entered upon the minutes of the Court. When such an order is entered, they shall immediately thereafter publish in some newspaper in the county for three consecutive weeks a notice of the entry of such order, giving a brief description in general terms of the changes made, without the necessity of including in such notice the field notes or other detailed description of the precinct boundaries. If there be no newspaper in the county, then copy of such order shall be posted in some public place in each election precinct in the county which is affected by the order.

"(b) No election precinct shall be formed out of two or more justice precincts or commissioners precincts, nor out of the parts of two or more justice precincts or commissioners precincts; and no election precinct shall be formed out of two or more congressional districts or

state senatorial districts or state representative
districts, nor out of the parts of two or more such
districts. If in September of any year there exists
any election precinct in the county which does not
comply with the foregoing requirements, the commis-
sioners court shall make the necessary changes
before the first day of October, either at a regular
meeting or at a special meeting called for that
purpose; and the order shall be published as pro-
vided in Paragraph (a) of this section. Subject to
the provisions of the first sentence of this paragraph,
no election precinct shall have resident therein less
than 100 nor more than 2000 voters as ascertained
by the number of registered voters for the last pre-
ceding presidential general election year; provided,
however, that in precincts in which voting machines
or devices have been adopted for use in accordance
with Section 79 or Section 80 of this Code, the maxi-
mum number of voters shall be 3000. There shall
be a minimum of one election precinct wholly con-
tained within each commissioners precinct." (Acts
1973, 63rd Leg., ch. 542, p. 1408).

"(c) In cities and towns having ten thousand or
more inhabitants, each ward shall constitute an elec-
tion precinct unless there shall reside in said ward
more than two thousand qualified voters. In such
cities and towns, no precinct shall be made out of parts
of two wards; and no precinct shall include territory
outside the corporate limits of the city or town unless
the Commissioners Court finds that adjacent unincor-
porated territory is so situated that it cannot be formed
into or included within an election precinct wholly out-
side the city, of suitable size and shape and containing
a suitable number of voters. If the Commissioners
Court finds this condition to exist, it may include such
territory in a precinct or precincts formed within the
city or town, and the finding of the Commissioners Court
shall be conclusive." (Acts 1967, 60th Leg., ch. 723, p. 1863).

Article 2.05 provides:

> ''The election precincts for municipal elections
> and the location of the polling place in each precinct
> shall be designated by the governing body of the muni-
> cipality.  The governing body may combine two or
> more county election precincts into one municipal
> precinct, but shall not include parts of one county
> precinct in more than one municipal precinct.  The
> certified list of qualified voters for all county election
> precincts in which voters reside who are to vote at a
> polling place designated by the governing body shall be
> used at such polling place.  In all cities and towns in
> which the number of voters at the last general muni-
> cipal election does not exceed four hundred in number,
> only one polling place shall be-opened at any municipal
> election; and all officers of such cities and towns to
> be elected shall be voted for at such polling place. ''

Also pertinent is language of Article 5, § 18, of the Texas Constitution
which requires that each county in the State be divided from time to time
"for the convenience of the people" into not less than four nor more than
eight precincts to be occupied by a justice of the peace and a constable and,
in like manner, into four commissioners precincts.

As we construe the statute, it was the intent of the Legislature that
the county election precincts coincide as much as possible with the city
wards.  This normally would be achieved by cooperation between the two.
If a cooperative effort fails to provide the needed changes, then, one must
first look to the Constitutions of the United States and of this State to deter-
mine which local governmental entity is required to make the necessary ad-
justments.

Any scheme for districting a county into commissioners districts is
subject to the mandates of Avery v. Midland County, 390 U.S. 474 (1968)
in which the one-man one-vote requirement of Reynolds v. Sims, 377 U.S.
533 (1964) applied to apportionments for local government as well as state
legislatures.

"Although the forms and functions of local government and the relationships among the various units are matters of state concern, it is now beyond question that a State's political subdivisions must comply with the Fourteenth Amendment . . . .

"When the State apportions its legislature, it must have due regard for the Equal Protection Clause. Similarly, when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process. . . ." (390 U.S. at 480)

In Attorney General Opinion H-32 (1973) we held that the holding of Avery v. Midland County, supra, applied to the election of commissioners and that it was not permissible for the members of the commissioners court to be apportioned among single-member districts of substantially unequal population.

The county government also has a state constitutional duty to draw boundaries for commissioner precincts and justice of the peace precincts. Texas Constitution, Article 5, § 18. To the extent that a city election precinct crosses justice of the peace and commissioner precinct lines and thus would require the redrawing of these constitutionally mandated districts, the city is under an obligation to revise its precinct boundaries to avoid the conflict. You have not advised us whether this is the situation in Bowie County.

It is our opinion, in this case, that the city has the primary duty to draw its precinct lines to conform to those of the county. Of course, since election precincts are the building blocks on which larger districts are constructed, it may be possible that some cities whose councilmen are elected by the voters of a particular district would have a constitutional duty to alter their precinct lines in an effort to conform to the one-man, one-vote principle. According to the facts you have submitted, that is not the situation in this case.

## SUMMARY

A county is not required to alter its election precincts, which were drawn in contemplation of Avery v. Midland County, to conform to the election precincts of a city which does not elect its councilmen by individual districts.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee